16-11595-RGS

# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

**Mark G. DeGiacomo, Chapter 7 Trustee of the Upper Crust, LLC, et al.**

*Plaintiff – Appellee*

v.

**Jordan and Stefany Tobins**

*Defendants – Appellants*

---

On Appeal from the Judgment of the

United States Bankruptcy Court for the District of Massachusetts

---

**BRIEF**

---

Counsel for Appellants:

Richard Briansky  (BBO# 632709)
Amy B. Hackett  (BBO# 676345)
McCarter & English LLP
265 Franklin Street
Boston, MA 02110
T: (617) 449-6500
F: (617) 607-9312
rbriansky@mccarter.com
ahackett@mccarter.com

Dated August 25, 2016

# TABLE OF CONTENTS

**Page(s)**

Statement of Appellate Jurisdiction........................................................ 6

Statement of Issues on Appeal ............................................................ 7

Statement of the Case........................................................................ 8

Argument......................................................................................19

I.   There is No Property to Recover and Therefore the Order Should Be

Reversed......................................................................................19

II.  Through the Settlement Agreement Any Fraudulently Conveyed Property

Was Returned to the Estate...............................................................22

III.   The Bankruptcy Court Lacks Jurisdiction to Enter Final Judgment On the

Counterclaims and Third Affirmative Defense .................................24

Relief Requested ............................................................................26

Certificate of Service .......................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

In re American Colonial Broadcasting Corp.,
   758 F.2d 794 (1st Cir. 1985) ...............................................................6

In re Bank of New England Corp.,
   218 B.R. 643 (1st Cir. BAP 1998) ......................................................6

In re Basler,
   Civil Action No. 11-12203-RWZ, 2012 WL 488530 (D. Mass. Oct. 14,
   2012) .....................................................................................................7

Bear Stearns Sec Corp. v. Gredd,
   275 B.R. 190 (S.D.N.Y. 2002)...........................................................22

Matter of Besing,
   981 F.2d 1488 (5th Cir. 1993)............................................................20

Dobin v. Presidential Fin. Corp. of Delaware Valley,
   312 B.R. 262 (D.N.J. 2004) ...............................................................23

In re Dreier LLP,
   429 B.R. 112 (Bankr. S.D.N.Y 2010)................................................22

Executive Benefits Ins. Agency v. Arkinson,
   134 S.Ct. 2165 (2014)........................................................................25

Feltman v. Warmus,
   229 B.R. 496 (Bankr.S.D. Fla. 1999) ................................................23

In re Kingsley,
   Adversary No. 06-2109-BCK, 2007 WL 149118*4 (Bankr. W.D. Mich.
   May 17, 2007)...............................................................................23, 24

In re Lone Star Pub Operations, LLC,
   465 BR 212 (Bankr. D Kan. 2012).................................................19, 22

In re Ogden,
   314 F.3d 1190 (10th Cir. 2002)..........................................................20

In re Polichuk,
  506 B.R. 405 (Bank. E.D. Pa. 2014) ................................................................23

Reynolds v. U.S.I.R.S.,
  Civil Action No. 13-10788-NMG 2014 WL 201610 (D.Mass. Jan. 15, 2014) ........................................................................................................................7

In re Ryan,
  472 B.R. 714 (Bankr. E.D. 2012) ....................................................................20

In re Salem Suede,
  221 B.R. 586 (Bank. D. Mass. 1998) .................................................................6

Segarra Miranda v. Garrido Pagan,
  382 F.3d 51 (1st Cir. 2004) ...............................................................................8

Sheehan v. Richardson,
  315 B.R. 226 (D.R.I. 2004) ...............................................................................6

SIPC v. Stratton Oakmont, Inc.,
  234 B.R. 293 (Bankr. S.D.N.Y. 1999)..............................................................23

In re Sybridge Corp.,
  312 B.R. 262, 271 (Bankr. D. N.J. 2004) .........................................................23

TI Fed. Credit Union v. DelBonis,
  72 F.3d 921 (1st Cir. 1995) ...............................................................................8

In re Whitley,
  463 B.R. 775 (Bank. M.D. N.C. 2012)..............................................................20

In re Williams,
  215 B.R. 289, n.6 (D. RI 1997) .........................................................................6

**STATE CASES**

Northborough v. Risley,
  384 Mass. 348 (1981) .......................................................................................23

**FEDERAL STATUTES**

11 U.S.C. § 541 .................................................................................................19

11 U.S.C. §§ 544, 548.................................................................................19, 22

11 U.S.C. § 544(b) ........................................................................................14

11 U.S.C. § 547, 548 ....................................................................................19

11 U.S.C. § 548 ............................................................................................14

11 U.S.C. § 550 ............................................................................................22

28 U.S.C. 158(a)(1) .......................................................................................6

28 U.S.C. 158(a)(3) .......................................................................................6

28 U.S.C. § 157 ............................................................................................24

Fed. R. Bank. P. 9033(d) ..............................................................................25

**STATE STATUTES**

M.G.L.c. 109A ..............................................................................................14

M.G.L.c. 109A §§ 2, 7 ..................................................................................19

M.G.L.c. 109A § 8 ........................................................................................20

**OTHER AUTHORITIES**

Risa Lynn Wolf-Smith, Forbearance Agreement Releases Should Be Enforceable

In Bankruptcy……………………………………………………………..21

## STATEMENT OF APPELLATE JURISDICTION

This Court has jurisdiction over Jordan and Stefany Tobins' appeal of a final

Order issued by the United States Bankruptcy Court for the District of

Massachusetts (the "Bankruptcy Court") on July 20, 2016 (the "Order") pursuant

to 28 U.S.C. 158(a)(1)[1], which grants jurisdiction of appeals from final Bankruptcy

Court decisions.  In particular, by issuing the Order, the Bankruptcy Court fully

and finally determined a discrete dispute that the prepetition settlement agreement

was not a bar to the Trustee's claims.   In re American Colonial Broadcasting

Corp., 758 F.2d 794, 801 (1st Cir. 1985) ("A bankruptcy order need not dispose of

all aspects of a case in order  to be final; an order which disposes of a 'discrete

dispute within the larger case' will be considered final and appealable."); see also

In re Bank of New England Corp., 218 B.R. 643, 648 (1st Cir. BAP 1998) (a ruling

that does not resolve the entire adversary proceeding but only an "identifiable part

of the proceeding" may nonetheless qualify as final for appeal); Sheehan v.

---

[1] Even if the Court determined the Order was interlocutory, the District Court has
discretion to allow hear the appeal.  See 28 U.S.C. 158(a)(3); see In re Salem
Suede, 221 B.R. 586 (Bank.D. Mass 1998); see also In re Williams, 215 B.R. 289,
n.6 (D.RI 1997) ("the language of 158(a)…vests broader discretion in the district
courts to permit interlocutory appeals including circumstances where 'serious,
perhaps irreparable consequence[s]' are threatened which can be 'effectually
challenged only by immediate appeal.'") This appeal involves an outcome
determinative dispute related to the preclusive effects of a prepetition settlement
agreement.  Allowing the appeal to proceed may render the pending trial on the
merits of the underlying fraudulent conveyance claims a nullity and efficiently and
effectively resolve the dispute for both parties.

Richardson, 315 B.R. 226, 233-34 (D.R.I. 2004) (bankruptcy court's order granting partial summary judgment was "final" for the purposes of appeal despite "two as yet unresolved issues" that remained outstanding in the adversary proceeding.); In re Basler, Civil Action No. 11-12203-RWZ, 2012 WL 488530 (D. Mass. Oct. 14, 2012) (concluding that an order granting a motion for partial summary judgment was sufficiently final for the purposes of appeal.)

On August 1, 2016 Jordan Tobins ("Jordan") and Stefany Tobins ("Stefany" collectively the "Tobins") filed a Notice of Appeal.

## STATEMENT OF ISSUES ON APPEAL

1.      Without any interest of the estate in property sought to be recovered, can a Trustee assert fraudulent conveyance claims ?

2.      Whether the Trustee can assert claims for fraudulent conveyance when the property allegedly fraudulently conveyed was returned via prepetition a settlement agreement to the debtor ?

3.      By entering summary judgment dismissing Jordan and Stefany Tobins' non-core counterclaims, did the Bankruptcy Court exceed its authority ?

The Court should review these issues de novo.  Reynolds v. U.S.I.R.S., Civil Action No. 13-10788-NMG 2014 WL 201610 *3 (D.Mass. Jan. 15, 2014) ("When reviewing the decision of a bankruptcy court with respect to summary judgment, a

ME1 23206550v.1

district court engages in  de novo review of all the issues."); TI Fed. Credit Union

v. DelBonis, 72 F.3d 921, 928 (1st Cir. 1995) (conclusions of law are reviewed de

novo)  Segarra Miranda v. Garrido Pagan, 382 F.3d 51, 57 (1st Cir. 2004) (order

granting summary judgment reviewed de novo).

## STATEMENT OF THE CASE

In or around 2005, Jordan, Joshua Huggard ("Huggard") and Brendan

Higgins ("Higgins") formed the Upper Crust, which was the sole member of

approximately fourteen (14) single-asset limited liability companies, which did

business as the Upper Crust.  (Record Appendix ("R.") at 59-60.)

.      On or about April 5, 2012, the Upper Crust, among others, filed an action

against Jordan and Stefany, two other corporations formed by Jordan (Coletrain

LLC and Coleman LLC), and the Upper Crust's former accountant in

Massachusetts Superior Court, Suffolk County, C.A. No. 12-1346 (the "Lawsuit").

(R. at 61.)   The Upper Crust sought to recover money allegedly diverted by Jordan

and others for personal purposes.  (R. at 62.)  In particular, the Lawsuit alleged

*inter alia* that:

- "Beginning in or about the end of 2007, Jordan commenced a course of conduct that would …systematically loot Upper Crust;"

- "Jordan charged over $750,000 [to corporate credit cards] for purposes that had no relationship whatsoever to the Upper Crust business;" and

- "Jordan misused corporate checks for personal expenses, including the down payment on a personal residence, furnishing and improving three

residences, boat maintenance and dockage, and the lease of three
Mercedes Benz cars."

(R. at 77 and 62.)

By "Settlement Agreement And Mutual Release" dated July 31, 2012, the

Upper Crust[2] agreed that in exchange for a payment of $250,000 and other

assumption of debt by Jordan that it "shall" dismiss the litigation "with prejudice,"

release the Tobins, and would agree not to "file, charge, claim or sue" the Tobins.

(R. at 30-41.)  Specifically, the Settlement Agreement provided *inter alia*:

> 18.    Tobins will pay or cause to be paid, by cash, bank
> check or wired funds, $250,000 to the Upper Crust, said
> payment to be made no later than October 1, 2012 (the
> "Closing Payment") and shall be made to an account or
> payee as designated by the Upper Crust in writing.  Upon
> receipt of said Closing Payment:
>
> a.    Tobins shall receive 100% ownership of
> Coleman, Coletrain and Cocobling, including the domain
> names associated with each (including
> theuppercrustpizzeria.com/) and the assets owned by said
> companies.  As part of this traction, Huggard/Higgins
> will provide Tobins with full access to his company
> email account.  Thereafter, no party will attempt to
> access, use or interfere with the email account of any
> other party, whether that account has been used for
> personal or business purposes.  Tobins shall not make
> any reference to or mention of Huggard/Higgins
> anywhere on theuppercrustizzeria.com or elsewhere in

---

[2] The Settlement Agreement defines "Upper Crust" as "The Upper Crust, LLC as
well as any and all members, managers, shareholders, owners, principals, parents,
subsidiaries…predecessors, successors and representatives."

promotional materials, but Tobins has not obligation to change any menu items.

        b.    Higgins/Huggard shall collectively receive 100% ownership of the Upper Crust and JJB.

        c.    The Litigation shall be dismissed with prejudice, with all rights of appeal waived and each side bearing its own costs and attorneys' fees.

        d.    In the event that the Closing Payment is not received by the Closing Date, this Agreement shall, at the option of Huggard/Higgins become null and void.

* * *

22.    Tobins, Coletrain, Coleman, and/or Cocobling will assume, pay and resolve the following liabilities as they become due

        a.  The class action liability (<u>Pinto, et al. v. Upper Crust el al.</u>, Massachusetts Suffolk Superior Court, Civil Action No. 2010-02847) up to $250,000.  Tobins, Coletrain, Coleman and/or Cocobling agree to pay 24% of any amounts paid over $250,000 and, Higgins/Huggard, Upper Crust and/or JJB will pay 76% of any such excess.

        b.  The liability to the Department of Labor ("DOL") which may result from settlement or trial on account of the ongoing investigation by the DOL of the Former Upper Crust Entities.

        c.  24% of the liability in the action <u>ZVI Construction Company, LLC v. The Upper Crust, LLC et al.</u>, Massachusetts Superior Court, Civil Action No. 2012-1369, with Huggard/Higgins, Upper Crust and/or JJB paying 76% of such liability.

10

* * *

26.    Notwithstanding the foregoing, Tobins agrees to pay any amounts due his grandmother loaned by her to the Former Upper Crust Entities . . . .

28.    Subject to the foregoing, the Huggard/Higgins Parties[3] and Hurley do hereby remise, release and forever discharge the Tobins Parties of and from any and all debts, actions, causes of, [sic] action, suits, accounts, covenants, contracts, omissions, liens, controversies, agreements, damages, and any and all claims, sums of money, demands and liabilities whatsoever of every name and nature, both in law and equity, known or unknown, direct or derivative, which the Huggard/Higgins Parties and/or Hurley now have or ever had against any of the Tobins Parties, including those claims which were or could have been asserted in the Litigation.  The Huggard/Higgins Parties and Hurley further agree and promise that they will not file, charge, claim, sue or cause or permit to be filed or charged, any action or claim for damages or other relief against any of the Tobins Parties for any matter arising from the creation of this earth to the date of the execution of this Agreement.  Nothing in the foregoing release shall relieve the Tobins Parties of their obligations under this Agreement or for any act occurring after the receipt of the Closing Payment.

* * *

35.    This Agreement was negotiated in good faith and constitutes a fair and reasonable resolution of this dispute. . .

(R. at 33-37 and 39.)

---

[3] The Settlement Agreement defines the "Huggard/Higgins Parties" as "Huggard, Higgins, Upper Crust, JJB and Cocobling"

11

On September 28, 2012, Jordan caused $250,000 to be paid to the Upper

Crust by having the funds wired to the Upper Crust's counsel.  (R. at 64.)     The

Trustee confirmed that

> The settlement agreement was signed by everybody.  We
> all agree on that.  The 250 was paid in a timely manner.
> We all agree on that.  And I think we agree that certain
> aspects of that settlement agreement were never
> consummated.  The legal effect of that is part of this case.

(Id. at 73).

 Although obligated to file a stipulation of dismissal, the Upper Crust failed to do

so and the Lawsuit remains active (but administratively stayed).   (R. at 33.)

Instead, on October 4, 2012, the Upper Crust filed voluntary petitions for relief

under Chapter 11 of the United States Bankruptcy Code.  (R. at 67-68.)

On March 6, 2013, the Upper Crust's cases were converted to Chapter 7 and

Mark DeGiacomo was appointed as the Chapter 7 trustee.  (R. at 2.)

On August 13, 2014, the Trustee filed an Adversary Complaint against the

Tobins claiming that the Tobins diverted funds from the Upper Crust to

themselves.  (R. at 71.) [4]   The Adversary Complaint alleges that:

---

[4] Before filing the Adversary proceeding, by letters dated January 29, 2014, the
Trustee demanded payments from both Jordan and Stephany.  The Demands
omitted (presumably intentionally) any reference to the Settlement Agreement.
Instead, the Demands summarily concluded that the Tobins received a series of
what the Trustee believe to be fraudulent transfers and requested payment in the
amount of approximately $1.38 million. By letter dated February 14, 2014, Tobins
responded to the Demands (the "Response").  In the Response, the Tobins denied

- "[B]eginning in or around the end of 2007, Jordan began transferring funds belonging to the Debtors to himself to pay for personal expenses and to support his extravagant lifestyle with his then girlfriend and alleged employee of the Debtors, Stefany;"

- "During the period of October 4, 2008 through the Petition Date, the Debtors transferred, other than salary, a total of $1,372,592.00 to or for Jordan's benefit (the 'Four-Year Transfers to Jordan'). These transfers were used to pay for personal real estate or other personal expenses . . . .;" and

- "During the period of October 4, 2008 through the Petition Date, the Debtors transferred, other than salary, a total of $49,934.00 to Stefany (the 'Four-Year Transfers to Stefany [sic]) an alleged employee who actually performed little or no services for the Debtors. These transfers were made to or for Stefany's benefit to pay personal expenses and to pay insurance premiums . . . ."

---

that any funds they received were "fraudulently transferred," denied they are obligated to pay any funds to the bankruptcy estates of the Upper Crust, and rejected the Trustees' attempt to avoid the Settlement Agreement, which specifically bars the assertion and prosecution of these claims. Nevertheless, the Trustee continues to simply ignore the release and its legal impact on the claims of the estate.

ME1 23206550v.1

(R. at 3.)   Based upon these factual allegations, the Trustee asserted asserted

claims for fraudulent conveyance against the Tobins.  (Adversary Complaint.)  The

claims include:

- an avoidance claim under 11 U.S.C. § 548 (Count I);

- avoidance claims under 11 U.S.C. § 544(b) and M.G.L.c. 109A (Count

  III and V) against Jordan; and

- avoidance claims under 11 U.S.C. § 544(b) and M.G.L.c. 109A (Count

  IV, VI) against Stefany.[5]

(Adversary Complaint, Counts I, III, IV, V, and VI.)

On November 13, 2014, Tobins filed a Motion to Withdraw Reference.   (R.

at 562.)  By Order dated December 22, 2014, the Court denied without prejudice

the Motion to Withdraw Reference.   (R. at 562.)   The Court acknowledged that

> [T]he parties agree that the reference must be withdrawn
> before trial because Tobins have a right to a jury trial on
> the Trustee's fraudulent conveyance claims and do not
> consent to trial in the bankruptcy court.

But concluded that

> [T]he interests of efficiency and uniformity will be best
> served by leaving the proceeding in the bankruptcy court
> at this time.  The court acknowledges that if the
> bankruptcy court determines that the Trustee's claims
> must be adjudicated as non-core and proposes  granting
> the Tobins's pending motion to dismiss the court may be
> called on in short order to conduct a de novo review

---

[5] There is no claim against Stefany under 11 U.S.C. § 548.

\* \* \*

>Defendants may seek to withdraw the reference at the
>close of discovery.

On December 18, 2015, Tobins filed a Motion for Summary Judgment (Docket No. 46); and a Renewed Motion to Withdraw Reference.   (Docket No. 8 in USDC MA Case 1:14-cv-14165-IT)    Through the Motion for Summary Judgment, Tobins sought to establish as a matter of law that the Trustee's claims were barred by the Settlement Agreement.  (R. at 27.)

On January 29, 2016, the Trustee filed an Opposition to the Motion for Summary Judgment.  (Docket No. 52).[6]

By Order dated February 10, 2016, , the Court denied without prejudice the Renewed Motion.   (Docket No. 13 in USDC MA Case 1:14-cv-14165-IT)

On March 28, 2016, the Tobins filed a Reply Brief and supplemental affidavit of Richard Briansky.  (Docket Nos. 58, 59).

On April 12, 2016, the Court held oral argument on the Motion for Summary Judgment.  (Docket No. 64).  Rather than decide the issues that were previously

---

[6] In his Opposition, the Trustee did not claim that his avoidance powers precluded the enforcement of the Settlement Agreement nor did the Trustee cross move for summary judgment.  Rather, the Trustee claimed that the Settlement Agreement was "never valid nor fully consummated."   (R. at 230.)

briefed, the Court *sua sponte* requested cross motions for summary judgment based upon the Trustee's avoidance powers.  (Id.)[7]

_____

[7] TR. at 23-25.

> Court:  But you didn't argue in your papers that the release isn't binding on you as the representative of the estate with the avoiding powers of a hypothetical lien creditor and an actual unsecured creditor or as a plaintiff under Section 548
>
> Mr. McDonald:  No, that—we did not address that issue Your Honor.  And quite frankly, it hadn't considered the tru –while we considered for the purposes of bringin the claim, the trustee's standing in the shoes of these hypothetical entities or individuals –
>
> Court:  Well –
>
> Mr. McDonald: – we—
>
> Court:  --since I raised it –
>
> McDonald:  Yes.
>
> Court:        --and I've given defendants notice that I think it's a relevant issue, I think the trustee needs to look at it too.
>
> * * *
>
> The Court:   And it would have been better if you made the alternative argument before today.  But since I raised it, I think you both need to do some more work.  So I'll expect a motion for partial summary judgment on the issue of whether the settlement agreement by the debtor is binding for the other reason, namely that the release is irrelevant to the trustee's assertion of avoiding power under 544, using state law, and 548

ME1 23206550v.1

On April 29, 2016, the Trustee filed a Motion for Partial Summary Judgment. (Docket No. 66). The Trustee's Motion sought to establish as a matter of law that Settlement Agreement "is not a bar to the Trustee's 544 Claims" because the Trustee is asserting these claims "standing in the shoes of an unsecured creditor." (R. at 525.)

On May 25, 2016, Tobins filed an Opposition to the Trustee's Motion and a Cross Motion for Summary Judgment. (Docket No. 75).

On July 1, 2016, the Trustee field a Reply and Opposition to the Tobins Motion. (Docket No. 84).

On July 20, 2016, the Court issued the Memorandum.[8] (R. at 558-576.) The Memorandum recognized that

> The Trustee, exercising his "strong arm" powers relies upon 544 (b) which authorizes a trustee to avoid 'any

---

[8] Although not directly relevant to the issue on appeal, the Court "observe[d]" that in the absence of evidence of an original contract among Tobins, Huggard and Higgins….as well as a clear and definite indication in the Settlement Agreement of intent among all parties that Tobins would be discharged from any and all claims regardless of the performance of the myriad duties imposed upon the parties in their Settlement Agreement, the concept and application of [sic] of a substituted contract to the facts of this case is strained at best…" This observation is directly contradicted by the terms of the Settlement Agreement (the authenticity of which is not disputed) which expressly released all claims in exchange for a payment of $250,000. Settlement Agreement, ¶ 18 ("Upon receipt of [the $250,000]…[T]he litigation shall be dismissed with prejudice with all rights of appeal waived…") To the extent there was a failure to perform the "myriad duties" under the Settlement Agreement the relief would be a claim for breach of the Settlement Agreement not to essentially rescind the agreement (retain the $250,000) and pursue Tobins for over $1.3 million.

transfer of **an interest of the debtor in property** or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title'

\* \* \*

[544] puts the debtor in possession 'in the overshoes' of a creditor

\* \* \*

In view of the authorities referenced above, the Court concludes that Defendants' Third Affirmative Defense lacks merit.  Even assuming that the Settlement Agreement and the concomitant release of the Defendants is enforceable among the parties executing it …the creditors of Upper Curst in whose shoes the Trustee stands, cannot be included among that group. Accordingly, the Trustee is not bound by any terms of the Settlement Agreement, whether it can be constructed as a substituted contract or not.  It follows, that the Defendants counterclaims against the Trustee also lack merit.

(R. at 571 and 573-574. Emphasis added).

By Order dated July 20, 2016, the Court granted

[T]he Motion for Partial Summary Judgment filed by the Plaintiff, Mark G. DeGiacomo, the Chapter 7 Trustee of the estate of the Upper Crust LLC and related entities (collectively, the Upper Crust" or "Debtor") with respect to the Defendants' Third Affirmative Defense and counterclaims set forth in their Amended Answer, Affirmative Defenses, Jury Demand and Counterclaim, and denies Defendants' Cross-Motion for Summary Judgment.

(R. at 577-578.)

ME1 23206550v.1

## **ARGUMENT**

## **I.   THERE IS NO PROPERTY TO RECOVER AND THEREFORE THE ORDER SHOULD BE REVERSED.**

By virtue of the prepetition Settlement Agreement the Upper Crust released any right to the property allegedly fraudulent transferred to Tobins.  Without a right to the property fraudulent conveyed, neither an unsecured creditor nor the Trustee asserting the unsecured creditor's claim derivatively, has a right to recover the property.  A fundamental requirement for avoiding transfers under either 11 U.S.C. §§ 544 or 548 is that the debtor have an interest in the property transferred. 11 U.S.C. §§ 544, 548 (transfer was a "transfer of an interest of the debtor in property."); see also M.G.L. c. 109A, §§ 2 and 7 (an "asset" is defined as "property of the debtor;" "transfer is made" when an "asset" is transferred to a "creditor"); In re Lone Star Pub Operations, LLC, 465 BR 212, 216 (Bankr. D Kan. 2012) (a "threshold requirement" for a fraudulent conveyance claim under either §§ 547 or 548 is "the property transferred must have belonged to the debtor.").  Although not defined, courts interpret the phrase "interest of the debtor in property" to refer to property that, but for the transfer, would have been property of the estate within the meaning of 11 U.S.C. § 541 and would have been available for the benefit of the debtor's creditors.  In re Lone Star Pub Operations, LLC, 465 BR 212, 216 (Bankr. D Kan. 2012) ("Property of the estate includes all legal or equitable interests of the

debtor in property as of the commencement of the case."); In re Ogden, 314 F.3d 1190 (10th Cir. 2002) ("[p]roperty of the debtor subject to [Sections 544, 547 and 548] is best understood as that property that would have been part of the estate had it not been transferred before the commencement of [the case]."); see also Matter of Besing, 981 F.2d 1488 (5th Cir. 1993) ("For 548 purposes, interest of debtor in property refers to property which would have been preserved for the benefit of the estate absent the transfer").  If the debtor had legal rights to the property, the debtor has an interest in the property within the meaning of this section and any transfer of an interest can be avoided.  See In re Whitley, 463 B.R. 775 (Bank. M.D. N.C. 2012) (funds transferred by debtor were interest of the debtor in property even though debtor operated Ponzi scheme and funds were initially fraudulently procured by investors);  In re Ryan, 472 B.R. 714 (Bankr. E.D. 2012) (debtor had right stop funds under power of attorney although not full ownership interest and thus transfer of funds was a transfer of interest of the debtor in property); see M.G.L.c. 109A, § 8  (limits right to recovery to only the amount of the property transferred).  Conversely, where a debtor releases its claims pre-petition, those claims are not property of the estate and cannot be asserted by the trustee post-petition.

> To the extent that  . . . released claims and rights arose
> under applicable nonbankruptcy law (such as a claim for
> aiding and abetting breach of fiduciary duty or under a
> theory of deepening insolvency), a prebankruptcy release

> should be enforceable.  This conclusion follows the
> general principal that the bankruptcy estate acquires only
> the property and claims of the debtor as they existed
> immediately before the bankruptcy case was filed.  Thus,
> if the debtor gave up his claims before the bankruptcy
> was filed, the released claims are not property of the
> bankruptcy estate  . . .

Risa Lynn Wolf-Smith, <u>Forbearance Agreement Releases Should Be Enforceable In Bankruptcy</u>, 31-FEB Am. Bankr. Inst. J. 26 (2012).

By its Order the Court failed to recognize the impact of the Settlement Agreement on the Trustee's assertion of an unsecured creditors' claim.  While the Order acknowledged that the Trustee was not bound by the Settlement Agreement (which for the purposes of this appeal, the Tobins do not dispute) the Court failed to consider and glossed-over the impact of the prepetition release had on the property the Trustee sought to recover through the fraudulent conveyance claims.  By signing the Settlement Agreement and accepting the $250,000, the Upper Crust released any property right to the funds allegedly diverted by the Tobins.  Specifically, the Upper Crust agreed to:

> remise, release and forever discharge the Tobins Parties
> of and from any and all debts, actions, causes of, [sic]
> action, suits, accounts, covenants, contracts, omissions,
> liens, controversies, agreements, damages, and any and
> all claims, sums of money, demands and liabilities
> whatsoever of every name and nature, both in law and
> equity, known or unknown, direct or derivative, which
> [the Upper Crust] now have or ever had against any of
> the Tobins Parties, including those claims which were or
> could have been asserted in the Litigation.

Without such a right to the property allegedly fraudulently transferred neither the Trustee nor any unsecured creditor has the right to pursue a claim for fraudulent conveyance.  See In re Dreier LLP, 429 B.R. 112, 125 (Bankr. S.D.N.Y 2010)("If the transfer did not involve property of the debtor under non-bankruptcy law, the trustee cannot avoid and recover the transfer or its value."); see also In re Lone Star Pub Operations, LLC, 465 BR 212, 216 (Bankr. D Kan. 2012) ("If the debtor's estate is not diminished by the transfer because the debtor did not have an equitable interest in the property, the property is not recoverable.")  As a result, the Order should be vacated and the Tobins are entitled to judgment as a matter of law.

## II.    THROUGH THE SETTLEMENT AGREEMENT ANY FRAUDULENTLY CONVEYED PROPERTY WAS RETURNED TO THE ESTATE.

By signing the prepetition Settlement Agreement and paying $250,000, any alleged property fraudulently transferred was returned to the estate, and the Trustee's claims either as an unsecured creditor or representative of the estate have been satisfied.  11 U.S.C. §§ 544, 548 in conjunction with § 550 authorize the Trustee to recover property that would otherwise have been available to the estate and its creditors.  See Bear Stearns Sec Corp. v. Gredd, 275 B.R. 190, 195 (S.D.N.Y. 2002) ("As we noted above, the purpose of 548(a)(1)(A) is to prevent the debtor from 'placing assets beyond the reach of creditors' by removing them

from the estate with the intent to hinder, delay or defraud his creditors.); <u>See</u> <u>SIPC</u> <u>v. Stratton Oakmont, Inc.</u>, 234 B.R. 293, 311 (Bankr. S.D.N.Y. 1999) (the principal purpose of section 544(b) "is to undo pre-petition transfers of property that remove or withhold that property from the estate to the prejudice of creditors."). <u>Dobin v. Presidential Fin. Corp. of Delaware Valley</u>, 312 B.R. 262, 271 (D.N.J. 2004); <u>See</u> generally <u>Feltman v. Warmus</u>, 229 B.R. 496, 530-31 (Bankr.S.D. Fla. 1999) (the purpose of 550 is to "restore the estate to the financial condition it would have enjoyed if the transfer had not occurred."); <u>In re Sybridge</u> <u>Corp.</u>, 312 B.R. 262, 271 (Bankr. D. N.J. 2004) ("We hold therefore that Section 550(d) of the Code empowers courts to prohibit from recovering under Section 550(a) from a transferee that has already returned to the estate that which was taken in violation of the Code."); <u>see also</u> <u>In re. Kingsley</u>, Adversary No. 06-2109-BCK, 2007 WL 149118 *4 (Bankr.W.D. Mich.  May 17, 2007) (Hyman, J.) ("to the extent a fraudulent transfer is repaid prepetition, the claim is satisfied."); <u>see</u> <u>Northborough v. Risley</u>, 384 Mass. 348 (1981) (the repayment of a fraudulent transfer to the transferor is sufficient to absolve the transferee of liability under the Uniform Fraudulent Transfer Act);  <u>See</u> <u>In re Polichuk</u>, 506 B.R. 405 (Bank. E.D. Pa. 2014) ( no right to recover property under the Pennsylvania uniform fraudulent transfer act if the transferee returns to property to the transferor).

In re Kingsley, Adversary No. 06-2109-BCK, 2007 WL 149118 *4 (Bankr.W.D. Mich.  May 17, 2007) (Hyman, J.), the Chapter 7 Debtor intentionally transferred funds to avoid a creditor's claims, but before filing for bankruptcy the funds were returned to the Debtor.  Upon filing for bankruptcy, the Trustee filed an adversary proceeding challenging the pre-petition transfer as fraudulent.  The Court concluded that both under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, the

> Trustee may not recover sums that were repaid to the Debtors or to the creditors on the Debtors' behalf prepetition.  Under these facts, avoidance and recovery would result in a windfall to the estate not contemplated by the Code or UFTA.

In this case, like Kingsley, the prepetition Settlement Agreement, repaid (in full) the amounts allegedly fraudulently conveyed.  Allowing the Trustee to avoid the payments (after the Upper Crust accepted the Settlement Agreement including the $250,000) would result in a "windfall to the estate."  As a result, the Trustee's claims have been fully satisfied.

## III.   THE BANKRUPTCY COURT LACKS JURISDICTION TO ENTER FINAL JUDGMENT ON THE COUNTERCLAIMS AND THIRD AFFIRMATIVE  DEFENSE

By its plain language 28 U.S.C. §157 expressly limits the Bankruptcy Court's jurisdiction over non-core claims and precludes a Bankruptcy Court from entering judgment.  In particular, 28 U.S.C. §157  provides in relevant part that

> A bankruptcy judge may hear a proceeding that is non-core but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of facts and conclusions of law to the district court and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

By Rule,

> the district judge may accept, reject or modify the proposed findings of fact or conclusions of law, receive further evidence or recommit the matter to the bankruptcy judge with instructions.

See Fed R. Bank.P. 9033(d).

Here, the Adversary Complaint contains non-core fraudulent conveyance claims and therefore the Court lacks jurisdiction to issue a final decision on the affirmative defense asserted by Tobins.  See e.g. Executive Benefits Ins. Agency v. Arkinson, 134 S.Ct. 2165, 2172 (2014) (adopting the Ninth Circuit's conclusion that "fraudulent conveyance claims although defined under section 157(b) as core may not as a constitutional matter be adjudicated as such (at least in absence of consent."). Likewise, the Counterclaim asserts common law claims related to the breach of the Settlement Agreement which do not arise under or in the bankruptcy. Rather the causes of action are common law based upon a prepetition Settlement Agreement.  Thus, the Court lacks jurisdiction to enter a final order.

## **RELIEF REQUESTED**

WHEREFORE, for the reasons set forth above, the Jordan and Stefany request that the Court:

- vacate the Order reinstating both their counterclaim and third affirmative defense;

- enter judgment in their favor dismissing all the Trustee's claims with prejudice; or

- in the alternative refer the case to the Bankruptcy Court for findings of fact and rulings of law on the Motion for Summary Judgment.

JORDAN TOBINS and

STEFANY TOBINS
By their attorneys,


*/s/ Richard Briansky*
Richard Briansky (BBO# 632709)
Amy B. Hackett (BBO# 676345)
McCarter English, LLP
265 Franklin Street
Boston, MA 02110
T:  (617) 449-6500
F:  (617) 607-9312
rbriansky@mccarter.com
ahackett@mccarter.com

Dated:  August 25, 2016

## CERTIFICATE OF SERVICE

I, Richard Briansky, hereby certify that this document was filed through the

Court's ECF System and will be sent electronically to the registered participants as

identified on the Notice of Electronic Filing (NEF) on August 25, 2016


*/s/ Richard Briansky*

ME1 23206550v.1