16-11595-RGS

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
_____


**MARK G. DEGIACOMO, CHAPTER 7 TRUSTEE OF THE UPPER CRUST, LLC, ET AL.**

Plaintiff - Appellee

v.

**JORDAN TOBINS AND STEFANY TOBINS**

Defendants - Appellants
_____

**APPELLEE'S BRIEF IN REPONSE TO APPELLANT'S APPEAL FROM THE UNITED STATES BANKRUPTCY COURT'S JULY 20, 2016 ORDER**
_____

Attorneys for Appellee Mark G. DeGiacomo, Chapter 7 Trustee of the Upper Crust, LLC, et al.

Mark G. DeGiacomo, BBO #118170
mdegiacomo@murthalaw.com
Ryan M. MacDonald, BBO #654688
rmacdonald@murthalaw.com
Anthony R. Leone, BBO #681760
aleone@murthalaw.com

MURTHA CULLINA LLP
99 High Street
Boston, Massachusetts 02110-2320
617.457.4000

Dated:  September 26, 2016

# TABLE OF CONTENTS

STATEMENT OF APPELLATE JURISDICTION ..................................................6

STATEMENT OF ISSUES ON APPEAL ..............................................................9

STATEMENT OF THE CASE...............................................................................10

SUMMARY OF THE ARGUMENT .....................................................................14

ARGUMENT ........................................................................................................16

I.   The Bankruptcy Court Did Not Err in Ruling the Trustee Has Standing to
Assert the Fraudulent Transfer Claims Asserted in the Adversary Complaint…16

  a. The Trustee has Standing to Assert the Section 544 Claims Standing in the
     Shoes of an Unsecured Creditor and Therefore the Release is Irrelevant...17

  b. The Trustee is the Only Party with Standing to Assert the Section 548
     Claims ......................................................................................................19

  c. The Release in the Settlement Agreement is not Enforceable against the
     Bankruptcy Estate Because the Settlement Agreement was Never Valid Nor
     Fully Consummated .........................................................................................21

II.  The $250,000 Payment Made on Behalf of the Debtors' has no Bearing on
the Trustee's Ability to Pursue Fraudulent Transfer Claims against the Debtors
…………………………………………………………………………………….26

III. The Bankruptcy Court Had Jurisdiction to Issue the Order by Virtue of the

Trustee's Standing in the Shoes of An Unsecured Creditor and not in the Shoes

of the Debtor ......................................................................................................27

CONCLUSION .........................................................................................................29

CERTIFICATE OF SERVICE ..................................................................................29

**TABLE OF AUTHORITIES**

**Cases**

Cochran v. Quest Software, Inc., 328 F.3d 1 (1st Cir. 2003) ........................... 15, 27

In re Bank of New England Corp., 218 B.R. 643 (1st Cir. BAP 1998)............ 6, 7, 9

In re Clark-Franklin-Kingston Press, Inc., 1993 WL 160580 (D. Mass. April 21,

    1993).................................................................................................................8, 9

In re Environmental Careers Organization, Inc., 2013 WL 936501 (D. Mass.

    March 11, 2013) ....................................................................................................9

In re IBI Security Serv., Inc., 174 B.R. 664 (E.D. N.Y. 1994).................................8

In re Kingsley, 2007 WL 1491188 (Bankr. S.D. Fl. May 17, 2007).......................27

In re Lowenstein, 312 B.R. 6 (Bankr. D. Mass. 2006) ...........................................18

In re Murray, 116 B.R. 6 (D. Mass. 1990)...............................................................8

In re Pearlman, 472 B.R. 115 (Bankr. M.D. Fla.), aff'd, 478 B.R. 448 (M.D. Fla.

    2012) ............................................................................................................ 19, 20

In re Tri-Star Tech. Co., Inc., 260 B.R. 319 (Bank. D. Mass. 2001)......................18

Massachusetts Mun. Wholesale Elec. Co. v. Town of Danvers, 411 Mass. 39

    (1991)...................................................................................................................23

Moore v. Bay, 284 U.S. 4, 52 S.Ct. 3, 76 L. Ed. 133 (1991)..................................19

Ondine Shipping Corp. v. Cataldo, 24 F.3d 353 (1st Cir. 1994)............................15

Pacamor Bearings, Inc. v. Minebea Co., Ltd., 892 F.Supp. 347 (D. N.H. 1995)......9

Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co., 445 Mass. 411 (2005)

.................................................................................................23

United States v. Corren, 605 F.2d 1211 (1st Cir. 1979) ...........................................7

**Statutes**

11 U.S.C. § 544.............................................................................................6

11 U.S.C. § 544(b) ................................................................................. 7, 9, 19

11 U.S.C. § 544(b)(1)..................................................................................17

11 U.S.C. § 548 ................................................................................ 7, 9, 19, 20

11 U.S.C. § 548(a) ......................................................................................19

11 U.S.C. § 550.................................................................................. 6, 7, 9, 20

28 U.S.C. § 157(c)(1)...............................................................................8, 16

28 U.S.C. § 158(a)(1)...............................................................................6, 7

28 U.S.C. § 158(a)(3)............................................................................. 7, 8, 9

Mass. Gen. Laws ch. 109A § 5(a)(2) ...................................................18

Mass. Gen. Laws ch. 109A § 6(a)..........................................................18

## STATEMENT OF APPELLATE JURISDICTION

The Defendants' assertion that the Bankruptcy Court's July 20, 2016 memorandum and order (the "Order") is a final order reviewable by this Court pursuant to 28 U.S.C. § 158(a)(1) is incorrect as a matter of law. Pursuant to 28 U.S.C. § 158(a)(1), a party may appeal, as a matter of right, only from final judgments, orders, and decrees. According to In re Bank of New England Corp., 218 B.R. 643, 646 (1st Cir. BAP 1998), "[a] decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" (internal citations omitted). The Order from which the Defendants appeal is not a final order for purposes of 28 U.S.C. § 158(a)(1). In its order denying the Appellants' Motion for Reconsideration, the Bankruptcy Court articulated the lack of finality of the Order in no uncertain terms. [Appellee Appendix ("App.") at 1]. The Bankruptcy Court stated, "[t]his court did not determine the merits of the Plaintiff's fraudulent conveyance claims," it only determined that the Settlement Agreement between the Debtor and Defendants did not preclude the Trustee from pursuing his claims under 11 U.S.C. §§ 544, and 550. [App. at 7].

The In re Bank of New England Corp. Court provided, "a bankruptcy court order is not appealable pursuant to 28 U.S.C. § 158(a)(1) 'unless it conclusively determines a discrete dispute within the larger case.'" In re Bank of New England

Corp., 218 B.R. at 647 (internal citations omitted).  In the context of a bankruptcy

appeal an adversary proceeding is the "relevant judicial unit" on which a

determination of finality of an order is made.  Id.  Here, the Order did not resolve

the Adversary Proceeding, let alone reach a decision on the merits.  As a result it

should not be reviewed pursuant to 28 U.S.C. § 158(a)(1).

The Trustee further avers that this Court should not exercise its discretion to

review the Order as an interlocutory appeal.  The case law is well settled.  The

decision to review interlocutory appeals is appropriate in only limited

circumstances—namely where an order involves a collateral issue or meets the

standards of 28 U.S.C. § 158(a)(3).  See In re Bank of New England Corp. 218

B.R. at 649-654.  An order is collateral only where the order involves:

> (1) an issue essentially unrelated to the merits of the main dispute,
> capable of review without disrupting the main trial; (2) a complete
> resolution of the issue, not one which is "unfinished" or
> "inconclusive"; (3) a right incapable of vindication on appeal from
> final judgment; and (4) an important unsettled question of controlling
> law, not merely a question of the proper exercise of the trial court's
> discretion.

United States v. Corren, 605 F.2d 1211, 1213 (1st Cir. 1979).

Here, the Order is directly related to the merits of the main dispute; i.e. the

Trustee's ability to bring fraudulent transfer claims against the Defendants based

upon 11 U.S.C. §§ 548, 544(b) and 550.  Likewise, as discussed more fully below,

the Order was limited to resolving arguments concerning the Trustee's standing to

assert fraudulent transfer claims and did not resolve the underlying merits of the

fraudulent transfer claims.  As the Bankruptcy Court has yet to reach a decision on

the merits (or refer findings of fact and conclusions of law to the district court for

review pursuant to 28 U.S.C. § 157(c)(1)) the Defendants maintain an ability to

appeal the matter properly at a later stage in the Adversary Proceeding.  See e.g. In

re Murray, 116 B.R. 6 (D. Mass. 1990) (where district court declined to grant leave

to hear appeal where appellant could raise arguments at later stage following a

final order by the bankruptcy court).

The Defendants have also not articulated an exceptional circumstance for

which appellate review is appropriate under 28 U.S.C. § 158(a)(3).  See In re IBI

Security Serv., Inc., 174 B.R. 664 (E.D. N.Y. 1994) (stating policy of postponing

review until after final judgment in absence of exceptional circumstances).  District

courts exercising discretionary authority to hear interlocutory appeals generally

"apply the standard for certifying appeals from the Unites States District Courts to

the United States Courts of Appeals pursuant to 28 U.S.C. 1292(b)."  In re Clark-

Franklin-Kingston Press, Inc., 1993 WL 160580 (D. Mass. April 21, 1993).  As

stated in In re Bank of New England Corp., a review of appellate jurisdiction under

28 U.S.C. § 158(a)(3), requires consideration of whether the order "'involves a

controlling question of law' (2) 'as to which there is substantial ground for

difference of opinion,' and (3) whether 'an immediate appeal from the order may

materially advance the ultimate termination of the litigation.'" In re Bank of New England Corp., B.R. at 652. Courts use discretionary authority to hear interlocutory appeals "with caution." Id. "The party seeking interlocutory appeal bears a 'heavy burden of persuading the court that exceptional circumstances warrant departure from the basic policy of postponing appellate review until after entry of a final judgment.'" In re Environmental Careers Organization, Inc., 2013 WL 936501 *1 (D. Mass. March 11, 2013) citing In re Clark–Franklin–Kingston Press, Inc., 1993 WL 160580 at *2.

Here, the Defendants fail to articulate an issue necessary for interlocutory review pursuant to 28 U.S.C. § 158(a)(3). See Pacamor Bearings, Inc. v. Minebea Co., Ltd., 892 F.Supp. 347, 361-362 (D. N.H. 1995) (party's dissatisfaction with court's standing decision did not amount to "substantial ground for difference of opinion"). It is fundamental principal of the Bankruptcy Code that a trustee has the statutory authority to assert fraudulent transfer claims under 11 U.S.C. §§ 548, 544(b), and 550. Despite the Defendants attempt to confuse the issue, this case is no different.

## STATEMENT OF ISSUES ON APPEAL

1.     Whether the Trustee has standing to assert the fraudulent transfer claims set forth in the Trustee's Adversary Complaint pursuant to 11 U.S.C. §§ 548, 544(b), and 550.

2.     Notwithstanding the fact that Defendants did not timely raise the issue with the Bankruptcy Court, whether Defendants' transfer of $250,000 fully satisfied the fraudulent transfer claims set forth in the Trustee's Adversary Complaint.

3.     Notwithstanding the fact that Defendants did not timely raise the issue with the Bankruptcy Court, whether the Bankruptcy Court had jurisdiction to enter its Order, which determined that the Trustee has standing to assert the fraudulent transfer claims standing in the shoes of an unsecured creditor and not the Debtors.

## STATEMENT OF THE CASE

On October 4, 2012, the Debtors filed voluntary petitions pursuant to Chapter 11 of the United States Bankruptcy Code (the "Petition Date"). [App. at 10, Bankr. Ct. 12-18134 Docket No. 1]. On November 7, 2012, the Trustee was appointed as the Chapter 11 Trustee of the Debtors' jointly administered cases. [App. at 24, Bankr. Ct. 12-18134 Docket No. 107]. On March 6, 2013, the Court entered an order converting the Debtors' jointly administered cases to Chapter 7 and the Trustee was appointed as the Chapter 7 Trustee of the Debtors' jointly administered cases. [App. at 53, Bankr. Ct. 12-18134 Docket No. 309].

On August 13, 2014, the Trustee filed an Adversary Complaint against Jordan Tobins and Stefany Tobins ("Jordan" and "Stefany", collectively "the Defendants"). [Bankruptcy Court Record, received September 16, 2016, ("R.") at

14].  In Counts I and II of the Adversary Complaint, the Trustee asserted claims against Jordan to avoid and recover certain transfers that the Debtors made to Jordan as fraudulent transfers pursuant to 11 U.S.C §§ 548 and 550 (collectively the "Section 548 Claims").  [R. at 17-19].  In Counts III-X the Trustee asserted claims against the Defendants to avoid and recover certain transfers that the Debtors made to the Defendants as fraudulent transfers pursuant the Trustee's avoidance powers under 11 U.S.C. §§ 544(b) and 550 and Mass. Gen. Laws c. 109A (the "Section 544 Claims") (Section 548 Claim and Section 544 Claims collectively the "Fraudulent Transfer Claims").  [R. at 19-22].

Prior to the Petition Date, the Debtors and Jordan along with the other principal owners of the Debtors, Brendan Higgins ("Higgins") and Joshua Huggard ("Huggard") (collectively the "Principal Owners") executed a Settlement Agreement and Mutual Release dated July 31, 2012 (the "Settlement Agreement"). [R. at 275].  Paragraph 28 of the Settlement Agreement contains the purported release and covenant not to sue from the Debtors upon which the Defendants base their Third Affirmative Defense of release (the "Release").  [R. at 282].  Pursuant to the Settlement Agreement, the Principal Owners agreed to a corporate divorce which included the assumption of certain debts, certain corporate ownership transfers ("Ownership Transfers"), pledges ("Pledge Transfers"), and caused a settlement payment of $250,000 from Jordan to the Debtors' as consideration for

the Settlement Agreement Payment (the "Tobins Payment"). [R. at 275-286].

The Defendants' Amended Answer, Affirmative Defenses, Jury Demand and Counterclaim (the "Amended Answer and Counterclaim") asserted as the Third Affirmative Defense that "the Trustee's claims are barred by the Settlement Agreement and Mutual Release . . . ." [App. at 79]. In the Amended Answer and Counterclaim the Defendants also asserted three counterclaims against the Trustee: breach of contract (count I), breach of covenant of good faith and fair dealing (count II) and violation of M.G.L. c. 93A, §§ 2 and 11 (count III) (collectively the "Counterclaims"). [App. at 85-86]. The Defendants' based the Counterclaims solely on the assumption that the Trustee brought the Fraudulent Transfer Claims standing in the shoes of the Debtors in violation of the Release. [Id.]

On December 12, 2015, the Defendants filed a motion for summary judgment on all claims asserted by the Trustee (the "Defendants' Motion for Summary Judgment"). [R. at 55]. On January 29, 2016, the Trustee filed an opposition to the Defendants' Motion for Summary Judgment (the "Trustee's Opposition to Defendants' Motion for Summary Judgment"). [R. at 242]. On April 12, 2016, the Bankruptcy Court held a hearing on the Defendants' Motion for Summary Judgment and at the hearing, the Bankruptcy Court directed the Trustee to file a motion for summary judgment on the issue of the Trustee's standing to bring the Section 544 Claims and Section 548 Claims. [R. at 8, Bankr. Ct. 14-

01163 Docket No. 64].

On April 29, 2016, the Trustee filed a motion for partial summary judgment (the "Trustee's Motion for Partial Summary Judgment"). [R. at 504]. On May 25, 2016, the Defendants' filed an opposition to the Trustee's Motion For Partial Summary Judgment and a cross-motion for summary judgment (the "Defendants' Opposition and Cross-Motion for Summary Judgment"). [R. at 518]. On July 1, 2016, the Trustee filed a Reply to the Defendants' Opposition to Motion for Summary Judgment and Opposition to Defendants' Cross-Motion for Summary Judgment. [R. at 563].

On July 20, 2016, the Bankruptcy Court issued a Memorandum and Order (the "Order"), denying the Defendants' Motion for Summary Judgment; granting the Trustee's Motion for Partial Summary Judgment; and denying the Defendants' Cross-Motion for Summary Judgment. [R. at 571]

On August 1, 2016, the Defendants' filed a motion for reconsideration of the Order (the "Defendants' Motion for Reconsideration"). [App. at 88].

On August 3, 2016, the Defendants' filed a notice of appeal with the Bankruptcy Court. [App. at 98]

On August 25, 2016, the Defendants' filed their appellate brief (the "Defendants' Brief") with the United States District Court, for the District of Massachusetts. [D. Mass. 16-11595 Docket No. 8].

On August 31, 2016, the Trustee filed an Opposition to the Motion for

Reconsideration. [App. at 100]. On September 8, 2016, the Bankruptcy Court

denied the Defendants' Motion for Reconsideration, stating in relevant part:

> Indeed, the facts pertinent to the Court's summary judgment rulings
> were undisputed, and the issue raised by the parties was whether the
> prepetition Settlement Agreement between the Debtor and the
> Defendants precluded the Trustee from prosecuting his claims under
> the provisions of §§ 544(b) and 550 of the Bankruptcy Code. This
> Court did not determine the merits of the Plaintiff's fraudulent
> conveyance claims.

[App. at 7].

## SUMMARY OF THE ARGUMENT

The Bankruptcy Court did not err in ruling that the Trustee and unsecured

creditors of the Debtors have standing to recover property subject to the Fraudulent

Transfer Claims asserted in the Adversary Complaint. Even assuming *arguendo*

that the Settlement Agreement is valid, the Defendants' assertion incorrectly

assumes that the Fraudulent Transfer Claims are derivative of the Debtor and

therefore barred by the Release in the Settlement Agreement. Here the Trustee has

asserted the Fraudulent Transfer Claims standing in the shoes of an unsecured

creditor and not the Debtors. Notwithstanding the Defendants' incorrect assertion

concerning the Trustee's ability to recover property subject to the Fraudulent

Transfer Claims, the Release in the Settlement Agreement is not enforceable

against the Trustee and unsecured creditors of the Debtors because the Settlement Agreement was never fully consummated.

The Defendants' other arguments also lack merit and must be rejected because they are entirely new arguments which were not properly raised with the Bankruptcy Court. As articulated by the court in <u>Cochran v. Quest Software, Inc.</u>, 328 F.3d 1, 11 (1st Cir. 2003), "it is a virtually ironclad rule that a party may not advance for the first time on appeal either a new argument or an old argument that depends on a new factual predicate." <u>See</u> <u>also</u> <u>Ondine Shipping Corp. v. Cataldo</u>, 24 F.3d 353, 355 (1st Cir. 1994) ("Not only is it 'a bedrock rule' that a party who has not presented an argument below 'may not unveil it in the court of appeals,' but also, no principle is more firmly anchored in the jurisprudence of this circuit . . .").

The Defendants' second argument, that the $250,000 payment on behalf of the Defendants pursuant to the Settlement Agreement satisfies the Fraudulent Transfer Claims was not raised below and should not be considered, but even if it could be raised, the argument lacks merit. Here the Trustee is seeking to avoid approximately $1.4 million in transfers, which far exceeds the $250,000 that Jordan paid to the Debtors in connection with the Settlement Agreement. At most, the payment of $250,000 pursuant to the Settlement Agreement would be an offset

against the Trustee's Fraudulent Transfer Claims of at least $1.4 million, which is clearly insufficient to eclipse the amount of the Fraudulent Transfer Claims.

The Defendants' final argument, that the Bankruptcy Court did not have jurisdiction to enter the Order misconstrues the Bankruptcy Court's rationale. The Bankruptcy Court did not decide the merits of the Fraudulent Transfer Claims or Counterclaims, but rather only affirmed the fact that the Trustee is pursuing the Section 544 Claims standing in the shoes of an unsecured creditor and not standing in the shoes of the Debtors. Because the Order appropriately determined that the Trustee may stand in the shoes of an unsecured creditor, the Counterclaims, which are applicable only to the Debtors, do not apply to the Trustee and were therefore properly rejected by the Bankruptcy Court. Put another way, the Counterclaims are not against the party in whose shoes the Trustee stands and therefore must fail. Even assuming for purposes of this Appeal, that the Order addressed non-core matters, at most the Bankruptcy Court would need to file the Order as a proposed findings of facts and conclusion of law for review by the District Court pursuant to 28 U.S.C. § 157(c)(1).

## **ARGUMENT**

### I. ***The Bankruptcy Court Did Not Err in Ruling the Trustee Has Standing to Assert the Fraudulent Transfer Claims Asserted in the Adversary Complaint***

a. *The Trustee has Standing to Assert the Section 544 Claims Standing in the Shoes of an Unsecured Creditor and Therefore the Release is Irrelevant*

Notwithstanding the fact that the Settlement Agreement is not valid, even if the Settlement Agreement were valid, it would not bar the Trustee's claims. The Defendants' assertion that the Trustee does not have standing to assert the Section 544 Claims because the claims are not property of the estate and therefore the Trustee would first have to avoid the Settlement Agreement is incorrect as a matter of law. Because the Section 544 Claims are derivative claims of a general unsecured creditor (and not the Debtors), the Trustee does not need to avoid the Settlement Agreement, which only impacts the Debtors, as a condition precedent to his standing to assert the Section 544 Claims. The validity and or/enforcement of the Settlement Agreement is irrelevant to the issue of the Trustee's standing to assert the Section 544 Claims.

The Trustee brought the Section 544 Claims standing in the shoes of a general unsecured creditor with an allowable claim that existed as of the date of the Debtor's transfers to the Defendants and as of the Petition Date. Section 544(b)(1) states that "the trustee may avoid any transfer of an interest of the debtor ***that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502*** of this title . . . ." 11 U.S.C. § 544(b)(1) (emphasis added). In this instance, the Section 544 Claims seek to avoid prepetition transfers

the Debtor made to the Defendants under Mass. Gen. Laws ch. 109A, §§ 5(a)(2)

and 6(a).  Claims to avoid transfers under Mass Gen. Laws ch. 109A § 5(a)(2)[1]

may be brought by creditors whose claim existed at the time of **or** arose after the

transfer, whereas claims under Mass. Gen. Laws ch. 109A § 6(a)[2] can only be

brought by creditors whose claim existed at the time of the transfer in question.

Therefore, the Trustee's derivative standing to assert the Section 544 Claims based

upon Mass. Gen. Laws ch. 109A § 6(a) is "…dependent on the existence of at least

one actual unsecured creditor who could have avoided the challenged transfers

[under state law]."  In re Tri-Star Tech. Co., Inc., 260 B.R. 319, 324 (Bank. D.

Mass. 2001).  The Trustee's avoidance powers under Section 544(b) are not

limited or capped by the amount of the claim of the qualifying unsecured creditor.

See In re Lowenstein, 312 B.R. 6, 12 (Bankr. D. Mass. 2006) ("[s]o long as such a

creditor exists, the trustee may assert that creditor's avoidance rights for the benefit

of the entire bankruptcy estate and all its creditors, not just for the benefit of that

---

[1] "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation. . . ."  Mass. Gen. Laws ch. 109A, § 5(a)(2).

[2] "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation."  Mass. Gen. Laws ch. 109A, § 6(a).

creditor in the amount of the creditor's claim.") (citing <u>Moore v. Bay</u>, 284 U.S. 4, 52 S.Ct. 3, 76 L. Ed. 133 (1991)).

As the Trustee correctly argued in his Reply to Defendants' Opposition to Motion for Summary Judgment and Opposition to Defendants Cross-Motion for Summary Judgment and as affirmed by the Court in the Order, because the Section 544 Claims are derivative claims of a general unsecured creditor (and not the Debtors), the Trustee does not need to avoid the Settlement Agreement as a condition precedent to his standing to assert the Section 544 Claims. As stated in the Order, "[e]ven assuming that the Settlement Agreement and the concomitant release of the Defendants is enforceable and binding upon Huggard, Higgins, Upper Crust, JJB and Cocobling, the creditors of Upper Crust in whose shoes the Trustee stands, cannot be included among that group." [R. at 587].

b. *The Trustee is the Only Party with Standing to Assert the Section 548 Claims*

While the Trustee may assert avoidance actions under applicable state law pursuant to 11 U.S.C. § 544(b), 11 U.S.C. § 548(a) codifies the Trustee's ability to avoid fraudulent transfers under federal law. The Trustee is the only party who has standing to pursue fraudulent transfer claims under 11 U.S.C § 548 on behalf of the Debtors' bankruptcy estate and for the benefit of its creditors. <u>In re Pearlman</u>, 472 B.R. 115, 121-22 (Bankr. M.D. Fla.), aff'd, 478 B.R. 448 (M.D. Fla. 2012). ("[O]nly the trustee can bring federal and state law fraudulent transfer actions to

recover property for the bankrupt estate." <u>In re Pearlman</u>, the Court rejected the defendant transferee's argument that the *in pari delicto* defense precludes the trustee's fraudulent transfer claims under 11 U.S.C. §§ 544 and 548. <u>Id.</u> at 122-123. In rejecting the defendant's argument the Court stated, "as a general rule, plaintiffs in fraudulent conveyance actions are not subject to defenses that could be raised against the debtor." <u>Id.</u> at 123 (internal citations omitted). The Court went on to state that, "the Bankruptcy Code specifically charges the trustee with the task of recovering fraudulent transfers by the debtor for the benefit of the estate…[h]olding a trustee lacks standing to pursue these actions would gut a trustee's avoidance powers entirely." <u>Id.</u>

Here, the Trustee is seeking to avoid and recover certain transfers as fraudulent transfers that the Debtors made to Jordan and Stefany under 11 U.S.C. §§ 548 and 550. The Defendants have asserted that the Release in the Settlement Agreement constitutes a complete defense to and precludes the Trustee's Section 548 Claims. However, similar to the *in pari delicto* defense in <u>In re Pearlman</u>, and as addressed above, the Release is a defense that can only be asserted against the Debtors not the Trustee. <u>In re Pearlman</u>, 472 B.R. at 121. Because the Release is a defense against any claim that might be brought by the Debtors, it cannot as a matter of law be asserted as a defense against the Trustee's Section 548 Claims.

*c. The Release in the Settlement Agreement is not Enforceable against the Bankruptcy Estate Because the Settlement Agreement was Never Valid Nor Fully Consummated*

Notwithstanding the fact the Settlement Agreement does not apply to the Trustee or unsecured creditors, the Settlement Agreement is not valid, as (1) Superior Court approval was required to effectuate the Settlement Agreement and (2) conditions precedent to the Settlement Agreement were never satisfied. Paragraphs 18 and 27 of the Settlement Agreement imposed an obligation on Jordan and other members of the Debtors to cooperate in obtaining any necessary court approvals to effectuate the Settlement Agreement. [R. at 278-279, 281-282]. As of the date of the Settlement Agreement, Jordan, Huggard, and Higgins were respectively subject to the terms of the two separate injunctions that were issued in the so-called Pinto Litigation.[3] [R. at 356-364]. The injunction against Jordan enjoined Jordan from:

> …transferring his personal ownership or interest in any assets, regardless of whether those assets are owned solely by him or jointly with other persons, until further order of this Court. The assets covered by this order include any ownership or interest in ….The Upper Crust, LLC (or related LLC's, corporations, partnerships, or other entities), or any other such assets with a cash or fair market value of greater than $2,500. This order shall continue in effect until otherwise ordered by the Court.

(the "Tobins Injunction") [R. at 362]. The injunction entered against Huggard and Higgins enjoined Huggard and Higgins from:

---

[3] <u>Pinto, et al. v. Upper Crust, LLC, et al.</u>, C.A. No. 10-2847-E (Mass. Super. Ct.)

... transferring ownership or interest in any assets except for expenditures required in the ordinary course of business, regardless of whether those assets are owned solely by them or jointly with other persons, until further order of this Court.

(the "Huggard/Higgins Injunction") [R. at 364]. Neither Jordan, Huggard or Higgins made any attempt to obtain Superior Court approval in the Pinto Litigation to modify the injunctions prior to, or after in connection with the Tobins Payment, Ownership Transfers or Pledge Transfers.[4] [R. at 356-359]. Nevertheless, Jordan caused the Tobins Payment to be made to the Debtors in violation of the Tobins Injunction and the Huggard/Higgins Injunction. Accordingly, the Tobins Payment was not a valid payment to the Debtors under the Settlement Agreement because it was done without a court-approved modification of the Tobins Injunction and Huggard/Higgins Injunction.[5] See National Merchandising Corp. v. Leyden, 370 Mass. 425. 432 (1976) (court held that a knowing violation of an injunction subjects violator (and those that assist the violator) to civil and criminal proceedings of contempt).

The Settlement Agreement is also not enforceable because it was conditional upon the performance of material obligations that were never performed. "A

---

[4] Counsel to the Pinto Creditors has stated that neither Jordan Tobins, Huggard nor Higgins requested that the Pinto Creditors consent to the Tobins Payment or the Ownership Transfers and Pledge Transfers. [R. at 358].

[5] The parties specifically provided in paragraph 18(d) of the Settlement Agreement that if the $250,000 was not paid by October 1, 2012 that the Settlement Agreement shall be null and void. [R. at 279].

condition precedent defines an event which must occur before a contract becomes effective or before an obligation to perform arises under the contract." Massachusetts Mun. Wholesale Elec. Co. v. Town of Danvers, 411 Mass. 39, 45 (1991); see also Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co., 445 Mass. 411, 420-21 (2005). "If a condition is not fulfilled, the contract, or the obligations attached to the condition, may not be enforced." Id. Furthermore, "words often used to create a condition precedent are 'on condition that,' 'provided that,' [and] 'if'". Massachusetts Mun. Wholesale Elec. Co., 411 Mass. at 46.

The Release specifically states at the outset that it was "Subject to the foregoing…." [R. at 282]. Therefore, consistent with Massachusetts Mun. Wholesale Elec. Co. v. Town of Danvers, the Release was conditioned upon the satisfactory completion by Jordan Tobins of, among other things, the Tobins Payment, Ownership Transfers, and Pledge Transfer, as set forth in paragraphs 18, 22, and 27 of the Settlement Agreement. These conditions were never satisfied. Therefore, the Settlement Agreement was never consummated and the Release in the Settlement Agreement is unenforceable against the bankruptcy estate.

Paragraph 18 of the Settlement Agreement addresses the requirements of the Tobins Payment and Ownership Transfers. Paragraph 18 provides as follows:

> …18. Tobins will pay or cause to be paid, by cash, bank check or wired funds, $250,000 to the Upper Crust, said payment to be made no later than October 1, 2012 (the "Closing Payment") and shall be

made to an account or payee as designated by the Upper Crust in writing. Upon the receipt of said Closing Payment:

a.     Tobins shall receive 100% ownership of Coleman, Coletrain and Cocobling, including the domain names associated with each (including theuppercrustpizzeria.com/) and the assets owned by said companies. As part of this transaction, Huggard/Higgins will provide Tobins with full access to his company email account. Thereafter, no party will attempt to access, use or interfere with the email account of any other party, whether that account has been used for personal or business purposes. Tobins shall not make any reference to or mention of Huggard/Higgins anywhere on theuppercrustpizzeria.com or elsewhere in promotional material, but Tobins has no obligation to change any menu items.

b.     Higgins/Huggard shall collectively receive 100% ownership of the Upper Crust and JJB.

c.     The Litigation shall be dismissed with prejudice, with all rights of appeal waived and each side bearing its own costs and attorneys' fees.

d.     In the event that the Closing Payment is not received by the Closing Date, this Agreement shall, at the option of Huggard/Higgins, become null and void.

The Parties agree to cooperate in obtaining any necessary court and/or secured lender approvals to effectuate such transfers and, once achieved, agree to execute the documents attached hereto at Exhibits A-E to make such transfers….

[R. at 278-279].

The requirements of the Pledge Transfers are set forth in paragraph 27 of the

Settlement Agreement. Paragraph 27 provides as follows:

…27. Subject to any required court approvals, Huggard, Higgins and Tobins will secure each of their respective financial obligation (including the obligations regarding debts and liabilities) hereunder by pledging his respective corporate ownership interests to the others (i.e., Tobins will pledge his interest in Coleman, Coletrain and Cocobling, and Huggard and Higgins will pledge their interest in The Upper Crust and JJB) by executing the document attached hereto at Exhibits F-H...

[R. at 281-282].

As of the date of the execution of the Settlement Agreement, the Tobins Payment, the Ownership Transfers and the Pledge Transfers would violate the terms of the Tobins Injunction and the Huggard/Higgins Injunction. Jordan, Huggard, and Higgins never made any attempt to seek Superior Court approval to modify the Tobins Injunction or the Huggard/Higgins Injunction to effectuate the Tobins Payment, the Ownership Transfers or the Pledge Transfers. [R. at 356-359]. As noted above, both paragraph 18 and 27 make explicit reference to the parties obtaining any necessary court approvals and the Settlement Agreement was reached nearly two and a half months prior to the Petition Date.

Moreover, the Principal Owners never even executed any of the required documents necessary to complete the Ownership Transfers or the Pledge Transfers referenced as Exhibits A-E and Exhibit F-H to the Settlement Agreement, respectively. [R. at 268]. Pursuant to paragraph 18(a), Jordan was to receive 100% ownership of Coleman, Inc. ("Coleman"), Coletrain, Inc. ("Coletrain") and Cocobling, LLC ("Cocobling"). [R. at 278]. At the time of the Settlement

Agreement, and as reflected in Exhibits A-E to the Settlement Agreement, Huggard and Higgins collectively owned 20% of Coleman and Coletrain and 66% of Cocobling. [R. at 287-322]. Exhibits A-C of the Settlement Agreement represented the respective redemption agreements and assignments of those interests in each of those entities to Jordan. [R. at 287-308]. At the time of the Settlement Agreement, and as reflected in Exhibits A-E to the Settlement Agreement, Jordan owned 45% of Upper Crust and 33% of JJB Hanson Management, Inc. ("JJB"). [R. 287-322]. Pursuant to paragraph 18(b), Higgins and Huggard were to receive 100% ownership of Upper Crust, LLC ("Upper Crust") and JJB. [R. at 278]. Exhibits D-E of the Settlement Agreement represented the redemption agreements and assignments of those interests in each of those respective entities to Higgins and Huggard. [R. at 311-322]. However, none of these exhibits were ever signed by the Parties.

## II. *The $250,000 Payment Made on Behalf of the Debtors' has no Bearing on the Trustee's Ability to Pursue Fraudulent Transfer Claims against the Debtors*

The Appellants' also assert that the Tobins Payment in connection with the Settlement Agreement "fully satisfied" any funds subject to the Fraudulent Transfer Claims. While, for the reasons discussed below, this argument lacks merit, it is improper for consideration in this Appeal because it is an entirely new argument that was not properly made in connection with the Bankruptcy Court

proceeding.  Quest Software, Inc. supra.  Therefore, while the Court should not

consider this argument, even if the Court were to consider this argument, the

argument fails.

The Trustee does not dispute that the Tobins Payment was made to the

Debtors on behalf of the Defendants.  However, even assuming *arguendo* that this

was a repayment of the funds fraudulently transferred to the Defendants, the

Tobins Payment is far less than the approximately $1.4 million the Trustee is

seeking to recover from the Defendants in connection with the Fraudulent Transfer

Claims.  In support of their "repayment" argument, the Defendants rely on In re

Kingsley, 2007 WL 1491188 (Bankr. S.D. Fl. May 17, 2007).  Their reliance on

Kingsley is misplaced.  In Kingsley, the court held that a trustee cannot avoid and

recover funds transferred by a debtor under a fraudulent transfer theory if the

transferee repaid the funds to the debtor prepetition.  Id. at *4.  This is not the case

in the present matter because (1) the Defendants did not repay the Debtors prior to

the petition date the approximately $1.4 million in transfers that Defendants

received from the Debtors and (2) at most the Defendants only repaid $250,000.

### III.    ***The Bankruptcy Court Had Jurisdiction to Issue the Order by Virtue of the Trustee's Standing in the Shoes of An Unsecured Creditor and not in the Shoes of the Debtor***

The Defendants' final argument, that the Bankruptcy Court did not have

jurisdiction to enter the Order misconstrues the actual holding of the Bankruptcy

Court and lacks merit. The Order did not determine the merits of the Fraudulent Transfer Claims or the Counterclaims, but rather only determined that the Trustee has standing to pursue the Fraudulent Transfer Claims standing in the shoes of an unsecured creditor. As a result, the Order does not touch upon non-core matters requiring this Court to alter the Order or for the Bankruptcy Court to submit proposed findings of fact and conclusions of law for review by the District Court.

As discussed above, the Order correctly affirmed the Trustee's ability to seek recovery of property subject to the Fraudulent Transfer Claims while standing in the shoes of an unsecured creditor. The Order, by determining the Trustee's standing to assert the Fraudulent Transfer Claims standing in the shoes of an unsecured creditor, implicitly determined that the Counterclaims must pertain to the unsecured creditor in whose shoes the Trustee stands. Because the Counterclaims were asserted against the Debtors, the Counterclaims have no impact on the Trustee's Fraudulent Transfer Claims and were appropriately denied by the Bankruptcy Court without adjudicating the merits of the Counterclaims. Put differently, because the Trustee is standing in the shoes of an unsecured creditor and not the Debtors, the Defendants' Counterclaims, which are only applicable to the Debtors, are inapplicable to the Trustee irrespective of the merits of the Defendants' Counterclaims.

# CONCLUSION

WHEREFORE, for the reasons set forth above, the Court should enter an order affirming the Bankruptcy Court's July 20, 2016 Memorandum and Order and enter judgment in favor of the Trustee.

**Attorneys for Appellee Mark G. DeGiacomo, Chapter 7 Trustee of the Upper Crust, LLC, et al.**

_/s/ Anthony R. Leone_
Mark G. DeGiacomo, BBO #118170
mdegiacomo@murthalaw.com
Ryan M. MacDonald, BBO #654688
rmacdonald@murthalaw.com
Anthony R. Leone, BBO #681760
aleone@murthalaw.com

MURTHA CULLINA LLP
99 High Street
Boston, Massachusetts 02110-2320
617.457.4000

# CERTIFICATE OF SERVICE

I, Anthony R. Leone, hereby certify that on the 26th day of September 2016, a copy of _Appellee's Brief In Response to Appellant's Appeal from The United States Bankruptcy Court's July 20, 2016 Order_ was filed through the Court's ECF System and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

_/s/ Anthony R. Leone_